Commonwealth of Pennsylvania, Department of General Services *v.* Zoning Board of Adjustment of the City of Philadelphia et al. Ogontz Area Neighbors Association, Appellant.

Commonwealth of Pennsylvania, Department of General Services *v.* Zoning Board of Adjustment of the City of Philadelphia et al. Zoning Board of Adjustment of the City of Philadelphia, Appellant.

Argued December 14, 1982, before Judges ROGERS, BLATT, CRAIG and DOYLE. Judge CRUMLISH, JR. did not participate.

*Denis James Lawler*, with him *Don P. Foster*, *Rubin, Quinn, Moss & Girard-di-Carlo*, and *Anthony P. Krzywicki*, Chief Counsel, for the Department of General Services.

*Charles B. Stokes, Jr.*, Assistant City Solicitor, with him *Alan J. Davis*, City Solicitor, for Zoning Board of Adjustment of the City of Philadelphia.

*David Cohen*, with him *Moira Dunworth*, for Ogontz Neighbors Association.

OPINION IN SUPPORT OF AFFIRMANCE BY JUDGE ROGERS, April 21, 1983:

The Ogontz Area Neighbors Association, an intervenor in a zoning case, has appealed an order of the Philadelphia Common Pleas Court, per Judge CHARLES A. LORD, reversing an order of the Philadelphia Zoning Board of Adjustment refusing a variance to the Commonwealth for the use of land in a residential zoning district as a facility for the mentally handicapped. The Zoning Board of Adjustment also appealed but it has no standing and its appeal will be quashed. *Lansdowne Borough Board of Adjustment's Appeal*, 313 Pa. 523, 170 A. 867 (1934); *National Development Corporation v. Township of Harrison*, 64 Pa. Commonwealth Ct. 59, 438 A.2d 1053 (1982).

This is another case presenting the issue of which shall govern the use of property—a Commonwealth agency (in this case proposing to establish a facility for mentally handicapped citizens committed to its care) or the municipality opposing its establishment as a use prohibited at the location proposed by the municipality's zoning ordinance. The issue has been definitively treated by the Pennsylvania Supreme Court in *City of Pittsburgh v. Commonwealth*, 468

Pa. 174, 360 A.2d 607 (1976). There the fundamental question was stated to be that of whether the Legislature intended the state agency to be immune from local zoning regulations and the answer to be found by examination of the grant of statutory power to the state agency on the one hand and the grant of zoning power to the municipality on the other and by balancing the one against the other. In *City of Pittsburgh,* the Supreme Court wrote that the Legislature "evinces an intent to override municipal zoning powers by the inclusion of the power of eminent domain to the state agency," *Id.* at 184-185, 360 A.2d at 613, and "if the Legislature intended that the Bureau [of Corrections] site selection was to transcend local land use regulation, it could have expressed that intention in more definite ways, e.g., . . . by the grant of eminent domain." *Id.* at 183 n. 7, 360 A.2d at 612 n. 7.

The site here is owned by the Department of General Services, having been acquired by deed in lieu of condemnation; and the facility for the mentally handicapped, including persons lately removed by order of the federal courts from the Pennhurst State School and Hospital, is to be in the charge of the Department of Public Welfare. The Department of Public Welfare is given power by Section 202 of the Mental Health and Retardation Act, Act of October 20, 1966, Special Session, P.L. 96, *as amended,* 50 P.S. §4202 to lease or otherwise acquire facilities through the Department of Property and Supplies, now the Department of General Services. The Department of General Services, in turn, is given power by Section 1 of the Act of July 15, 1919, P.L. 976, *as amended,* 71 P.S. §1571 to purchase or condemn land and buildings for use of institutions of the Commonwealth. Hence, the Legislature has in this instance evinced

an intent to override municipal zoning powers, as the common pleas court correctly concluded.

I would affirm the order of the Philadelphia Court of Common Pleas on the able and comprehensive opinion of Judge CHARLES A. LORD reported at D. & C.3rd ( ).

---

OPINION IN SUPPORT OF REVERSAL BY JUDGE CRAIG, April 21, 1983:

Although Judge LORD's opinion for the Court of Common Pleas of Philadelphia is an excellent one, we should not affirm the decision against the city because, under one of the principles in *City of Pittsburgh v. Commonwealth*, 468 Pa. 174, 360 A.2d 607 (1976), the General Assembly has clearly accorded primacy to the legislative grant of zoning authority to Philadelphia by providing:

> Whenever the regulations made under the authority of this [Zoning] Act require . . . or impose other higher standards than are required in any other statute . . . the provisions of the regulations made under authority of this act shall govern.

Act of May 6, 1929, P.L. 1551, §12, *as amended*, 53 P.S. §14762.

That conflict-of-laws provision certainly makes the legislative will explicit, in contrast to pursuing difficult semantic distinctions between a statutory power, as possessed by the state agency in the *Pittsburgh* case, to "establish" facilities and the agency's statutory power in this case to "acquire" facilities, particularly when the possibility of acquisition through the exercise of eminent domain is perceivable only by cross-reference to another statute, the one governing the Pennsylvania Department of General Services.

To accord the City of Philadelphia the same status as was accorded to the City of Pittsburgh is consistent with *Township of South Fayette v. Commonwealth*, 477 Pa. 574, 385 A.2d 344 (1978), where one of the factors permitting the state to prevail was the absence of a conflict-of-laws provision in the zoning enabling powers granted to the township under the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11108A. Because the latter Code governs municipalities other than Philadelphia and Pittsburgh, while those two larger cities have their separate statutes containing the conflicts declaration quoted above, there may have been legislative logic in providing that the land-use controls of the larger cities are to be given greater priority, in the context of metropolitan problems, than zoning regulations elsewhere in the state.

If the courts proceed to decide these issues on a case-by-case basis, by intangibly balancing "acquire" against "establish," and weighing indirect references to eminent domain powers against direct declarations of zoning primacy, then we become involved in the exercise of overly-broad judicial discretion, without any genuine guidelines. Instead of being required to balance various factors, which sometimes counterbalance each other, we should adhere to a clearcut judicial rule which would let the legislature, and local and state officials, know where they stand from the start. By letting the statutory conflict-of-laws provision be determinative, the legislators may proceed with clear judicial guidance that, if modification of the present allocation of zoning primacy is desirable as a matter of policy, then they—as those elected to make the laws—may amend the statutes clearly to do so.

PER CURIAM ORDER IN 768 C.D. 1982

AND Now, this 21st day of April, 1983, the court being equally divided, the order of the Court of Common Pleas of Philadelphia County dated March 8, 1982 is affirmed.

Judge ROGERS files an opinion in support of affirming, in which Judge BLATT joins.

Judge CRAIG files an opinion in support of reversal, in which Judge DOYLE joins.

President Judge CRUMLISH, JR., did not participate.

PER CURIAM ORDER IN 795 C.D. 1982

AND Now, this 21st day of April, 1983, by unanimous agreement of the Court it is ordered that the appeal of the Zoning Board of Adjustment of the City of Philadelphia docketed at 795 C.D. 1982 from the order of the Court of Common Pleas of Philadelphia County dated March 8, 1982 be and it is hereby quashed. *Lansdowne Borough Board of Adjustment's Appeal,* 313 Pa. 523, 170 A. 867 (1934), *National Development Corporation v. Township of Harrison,* 64 Pa. Commonwealth Ct. 54, 438 A.2d 1053 (1982).

President Judge CRUMLISH, JR., did not participate.