### NEW PLAN REALTY TRUST

### v.

### TAX REVIEW BOARD OF THE CITY OF PHILADELPHIA, Appellant.

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 1996.

Decided May 3, 1996.

John D. Christmas, Asst. City Sol., for appellant.

Mark E. Kogan, for appellee.

Before DOYLE and FRIEDMAN, JJ., and MIRARCHI, Senior Judge.

DOYLE, Judge.

The Tax Review Board of the City of Philadelphia (Board) appeals an order of the Court of Common Pleas of Philadelphia, reversing a business privilege tax assessment which the City of Philadelphia (City) issued against New Plan Realty (New Plan).

New Plan is a qualified real estate investment trust (REIT)[1] which owns and operates real estate holdings throughout the United States, including the Roosevelt Mall Shopping Center located in the City. New Plan filed City business privilege tax (BPT tax) returns for the years 1985 through 1988,

---

**1.** New Plan describes a REIT in its brief as a means "by which individual investors can pool their resources and secure advantages available only to those with larger resources." (New Plan's Brief at 6.) The particular advantages of

REIT's, as claimed by New Plan, include spreading the risk of loss, the opportunity to secure expert investment advice, and the collective financing of projects.

which reported that it had no taxable income for those years for purposes of the BPT tax. New Plan determined that it owed no BPT taxes based on its federal income tax liability, as permitted by Section 19–2601(a)(2) of the Philadelphia Code, which provides as follows:

(a) 'Net Income' shall, at the option of the taxpayer . . . be either:

. . . .

(2) The taxable income from any business activity as returned to and ascertained by the Federal Government prior to giving effect to the exclusion **for dividends received** and net operating loss. . . . (Emphasis added.)

New Plan's federal tax liability for the years 1984 through 1988 was zero since it was able to take advantage of a deduction for the dividends it paid to its shareholders which tax allowance is granted to all REITs under the Internal Revenue Code, 26 U.S.C. § 857.

In 1989, the City's Department of Revenue (Department), conducted an audit of New Plan's BPT tax liability. The Department determined that New Plan owed $246,647 in taxes, plus interest and penalties, and issued an assessment. The Department concluded that the federal "dividend paid deduction" under 26 U.S.C. § 857 was inapplicable to the BPT tax.

New Plan appealed to the Board, which upheld the City's tax assessment. The Board determined that the Philadelphia Code provides no special treatment for REITs and that New Plan was bound by the same rules as all other businesses in the City. Further, the Board stated that, if it recognized the federal dividends deduction and could not tax the local business directly, the money would escape taxation since the City cannot tax dividends received by non-resident shareholders. New Plan then appealed to the common pleas court which reversed the Board. The common pleas court determined

that the plain language of Section 19–2601 of the Code allowed New Plan to take advantage of the dividends paid deduction. The court stated that the Board "should have just taken the taxable income as returned to and as ascertained by the federal government and gone with that." (Notes of Testimony at 6; Reproduced Record (R.R.) at 28a.) The Board's appeal to this Court followed.

On appeal, the Board argues that the common pleas court erred in reversing the Board and holding that New Plan was entitled to deduct the dividends it paid to its shareholders, based on its federal tax liability, for purposes of the BPT tax under Section 19–2601(a)(2) of the Philadelphia Code.

Before reaching the merits of the Board's appeal, we must consider a threshold argument raised by New Plan. New Plan asserts that the Board's appeal must be quashed, because the Board is a quasi-judicial tribunal[2] and does not have standing to prosecute this appeal. We agree, and accordingly, quash this appeal.

Generally, any **party** to the litigation who is aggrieved by an appealable order has standing to file an appeal. Pa. R.A.P. 501. However, in a case where the appeal was taken by a zoning board, *Appeal of Lansdowne Borough Board of Adjustment*, 313 Pa. 523, 525, 170 A. 867, 868 (1934), our Supreme Court held that a zoning board, "as a board, has not been and cannot be injuriously affected by the [common pleas court's] order, and hence has no standing to appeal." That principle was extended beyond zoning cases in *Philadelphia Board of Pensions and Retirement v. Pearlman*, 137 Pa.Cmwlth. 146, 586 A.2d 466 , *petition for allowance of appeal denied*, 529 Pa. 627, 600 A.2d 542 (1991), where this Court held that because the City's Pension Board acts as a quasi-judicial tribunal, and not as an administrative agency,[3] the Pension Board did not have

---

**2.** The term quasi-judicial tribunal refers to administrative bodies required to "investigate facts, or ascertain the existence of facts, hold hearings, weigh evidence, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature." *Blacks Law Dictionary*, 1245 (6th Ed.1990).

**3.** We note that the United States Supreme Court has recently held that a federal agency, operating in its administrative capacity, does not have standing to appeal, unless there is specific statutory authorization allowing the appeal. *Director, Office of Workers' Compensation Programs, Department of Labor v. Newport News Shipbuilding and Dry Dock Co.*, —— U.S. ——, 115 S.Ct. 1278, 131 L.Ed.2d 160 (1995). In the absence of a

standing to appeal from matters which it originally adjudicated. Similarly, in *Department of Public Welfare v. Shapiro*, 80 Pa. Cmwlth. 182, 471 A.2d 160 (1984), where the Pennsylvania Department of Health appealed an order of the Board of Claims, we held that the Board of Claims had no standing to file preliminary objections with this Court in our appellate jurisdiction to the Department of Health's application for relief, since the Board of Claims is, in a general sense, a judicial tribunal charged by statute with the function of arbitrating contract claims against the Commonwealth.

■ The rationale underlying the above decisions is that courts and quasi-judicial tribunals function as neutral third parties responsible for resolving disputes. When a court or quasi-judicial tribunal hears a case, the dispute is between the litigating parties and not between the tribunal and the parties. *See Pearlman.* Hence, as a neutral decision maker, an adjudicating body does not ordinarily have a direct, immediate, or substantial interest in the litigation before it and thus cannot be aggrieved by subsequent judicial reversals of decisions that it originally issues. *See* Darlington et al., Pennsylvania Appellate Practice 2d. § 501:4.

We explained the function of the Tax Review Board in *Krug v. City of Philadelphia*, 152 Pa.Cmwlth. 475, 620 A.2d 46, 47 (1993), as follows:

> The Tax Review Board ... provides an administrative remedy for the resolution of disputes concerning a person's liability for City taxes.... The Board conducts public hearings at which the taxpayer is afforded the opportunity to make a record on the issue of why he or she should not pay all or some of the tax; at the conclusion of the hearing, the Board issues a written deci-

sion on the taxpayer's liability for the tax. (Citations omitted.) (Footnote omitted.)

Moreover, Section 19–1702 of the Philadelphia Code states that the Board has jurisdiction over

> [e]very petition for review of any decision or determination relating to the liability of any person for any unpaid money or claim collectible by the Department of Revenue, for or on behalf of the City or School District of Philadelphia....

■ It is clear that the Board is a quasi-judicial tribunal and that it operated as such when it denied New Plan's appeal of the Department's tax assessment. The instant dispute was between the two parties, the City of Philadelphia and New Plan, and the Board's role in this matter was limited to arbitrating that controversy. Therefore, we hold that the Board cannot be aggrieved by the common pleas court's order and, accordingly, has no standing to appeal that order to this Court.[4]

Why the Tax Review Board and not the City filed the appeal in this case is most perplexing in view of the fact that Judge Bernard J. Avellino, the common pleas court judge who heard the case below, sagely observed in his memorandum opinion that "[s]ince the agency adjudicated this matter to begin with, it lacks standing to appeal my order." (Memorandum Opinion at 1; R.R. at 41a.) While Judge Avellino's opinion includes a detailed footnote containing several citations to controlling case law regarding this issue, the Board, nevertheless, inexplicably, neglected to even discuss the standing issue in its brief to this Court. Moreover, considering that New Plan properly raised and developed the standing issue in its appellee's brief, the Board compounded its neglect

---

statute permitting such an appeal, an agency is not aggrieved. *Id.*

**4.** There can be no question in this case that it was the Board, and not the City, which took the appeal. First, the caption of the case identifies only one appellant, *viz.*, the Tax Review Board of the City of Philadelphia; second, appellant's brief was submitted on behalf of the "appellant," which is identified as the "Tax Review Board of the city of Philadelphia, Appellant;" third, counsel on the brief, an Assistant City Solicitor, iden-

tifies himself in the certificate of service as both the attorney "for appellant" and as the "attorney for plaintiff;" and fourth, and most critical fact, is that the Notice of Appeal filed by the Board, states in pertinent part:

> Notice is hereby given that the Tax Review Board of the City of Philadelphia, Appellant, hereby appeals to the Commonwealth Court ... from the Order entered in this matter on August 9, 1995.

(Notice of Appeal; R.R. at 34a.)

by refusing to even address the issue in a reply brief, as permitted by Pa. R.A.P. 2113. In our view, there is no excuse for the Board's failure to present argument on this vital issue.

Accordingly, this appeal is quashed.

### ORDER

NOW, May 3, 1996, the appeal in the above-captioned matter is hereby quashed.